**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**ENDURANCE SPECIALITY INSURANCE**
**LIMITED,**

                    **Petitioner,**

      **- against -**

**HORSESHOE RE LIMITED, on behalf of**
**and for the benefit of its Separate**
**Accounts HS0083 and HS0084,**

                **Respondent.**
────────────────────────────────

**No. 23-cv-1831 (JGK)**

**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

    The petitioner, Endurance Specialty Insurance Limited ("Endurance") brought this action in the New York State Supreme Court, New York County, against respondent Horseshoe Re Limited, which acts on behalf of and for the benefit of Separate Accounts HS0083 and HS0084 ("Horseshoe"). Endurance petitioned the state court to remove the presiding arbitrator in Endurance's ongoing arbitration proceedings with Horseshoe in Bermuda. Endurance alleged that the arbitrator was biased. Horseshoe removed the case to this Court, asserting federal subject-matter jurisdiction and removal authority pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention" or "Convention"), as incorporated into the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208.

Two motions are now before the Court: the petitioner's motion to remand the action to New York State Supreme Court, ECF No. 18; and the respondent's motion to dismiss the petition for failure to state a claim, ECF No. 20. For the following reasons, the petitioner's motion to remand is **denied** and the respondent's motion to dismiss is **granted**.

**I.**

**A.**

Petitioner Endurance is an insurance company organized under the laws of Bermuda, with its principal place of business in Bermuda. See Resp.'s Memo. on Dismissal, ECF No. 21, at 2; Pet. ¶ 1, Notice of Removal, Ex. A, ECF No. 6-1 ("Ex. A") at 2.[1] Respondent Horseshoe is comprised of collateralized Separate Accounts HS0083 and HS0084, organized under the laws of Bermuda and belonging to a Bermuda limited liability company with its principal place of business in Bermuda. See Resp.'s Memo. on Dismissal at 2; Pet. ¶ 2, Ex. A at 2. In 2022, the parties initiated arbitration proceedings in Bermuda regarding a dispute subject to their materially identical reinsurance contracts,

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text. Exhibit A to the Notice of Removal, ECF No. 6-1, contains many of the underlying documents relevant to this case. All citations to Exhibit A refer first to the title and internal pagination of the specific document cited, and then to the relevant PDF page number of Exhibit A.

which contain identical arbitration provisions. See Resp.'s
Memo. on Dismissal at 2-3; Pet. ¶¶ 8-10, Ex. A at 4.

The arbitration clauses require disputes to be arbitrated
in Hamilton, Bermuda, pursuant to Bermuda procedural law, namely
the Bermuda Arbitration Act 1986 ("Bermuda Arbitration Act"),
and pursuant to New York substantive law. In particular, the
contracts state:

> The seat of the arbitration shall be in Hamilton, Bermuda
> and the arbitration tribunal shall apply the laws of the
> state of New York as the proper law of th[e] Reinsurance
> Contract.

> The arbitration shall be conducted under, and the
> arbitration tribunal shall be governed by, the
> provisions of the Bermuda Arbitration Act 1986 and/or
> any statutory modifications or amendments thereto for
> the time being in force.

Contract No. XA200910M at 22, Ex. A at 39; Contract No.
XA200911M at 21, Ex. A at 64.

The arbitration clauses also call for each party to appoint
an arbitrator and for the party-appointed arbitrators to agree
upon an Umpire. If the party-appointed arbitrators cannot agree
on an Umpire, the parties may ask the Secretary General of the
Court of Arbitration of the International Chamber of Commerce
("ICC Court") to appoint one. The clauses specify that all
arbitrators must "be completely impartial and disinterested in
their respective appointing parties and in the result of the

arbitration." Contract No. XA200910M at 22, Ex. A at 39;
Contract No. XA200911M at 21, Ex. A at 64.

After the party-appointed arbitrators failed to agree on an
Umpire in the Bermuda arbitration proceeding at issue in this
case, Horseshoe applied to the ICC Court for an appointment.
Resp.'s Memo. on Dismissal at 3. On October 6, 2022, the ICC
Court appointed Sir Bernard Eder as presiding arbitrator. See
ICC Appointment Ltr. at 2, Ex. A at 104. Endurance challenged
the appointment of Sir Bernard before the ICC Court, alleging
that Sir Bernard is biased because the ICC Court provided him
with correspondence in which Endurance "aggressively opposed"
the appointment of an Umpire with his precise background and
because of his treatment of Endurance's counsel in a recent
unrelated arbitration. ICC Decision ¶¶ 2-4, Ex. A at 116. On
February 9, 2023, the ICC Court released a written opinion
rejecting Endurance's challenge on the merits. Id. ¶ 21, Ex. A
at 119.

**B.**

On February 13, 2023, Endurance petitioned the New York
State Supreme Court to remove and replace Sir Bernard because of
his alleged lack of impartiality.[2] Pet. Prayer for Relief ¶¶ 2-3,

---

[2] Endurance also petitioned the state court to stay the
arbitration. See Pet. Prayer for Relief ¶ 1, Ex. A at 8. Because
the Bermuda arbitration tribunal has stayed the arbitration
pending the resolution of these motions, that request is moot.

Ex. A at 9. Horseshoe then removed the case to this Court
pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1441(a), asserting
that original jurisdiction existed under 28 U.S.C. § 1331 and 9
U.S.C. § 203. Notice of Removal, ECF No. 6, at 1. The second
jurisdictional provision, 9 U.S.C. § 203, is part of Chapter 2
of the FAA, which incorporated the New York Convention into U.S.
law. See 9 U.S.C. §§ 201, 203. Section 203 of the FAA grants
district courts original jurisdiction over any action or
proceeding falling under the New York Convention. Id. § 203.

On April 11, 2023, Endurance moved to remand the case back
to the New York State Supreme Court for lack of federal subject-
matter jurisdiction. ECF No. 18. On the same day, Horseshoe
moved to dismiss Endurance's petition for failure to state a
claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF
No. 20. The Bermuda arbitral tribunal, which initially stayed
the underlying arbitration proceedings pending the resolution of
Endurance's challenge before the ICC Court, has since continued
the stay until this Court resolves the parties' motions. See ECF
No. 31; ECF No. 31-1.

## II.

On a motion to remand for lack of federal subject-matter
jurisdiction, the removing party (in this case, Horseshoe) bears
the burden of establishing the propriety of removal. Cal. Pub.
Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir.

2004). In evaluating the motion, this Court must assume the truth of non-jurisdictional facts alleged in the petition, but may consider materials outside the petition, such as documents attached to the notice of removal or the motion to remand that convey information essential to the jurisdictional analysis. See BGC Partners, Inc. v. Avison Young (Can.), Inc., 919 F. Supp. 2d 310, 312 n.3 (S.D.N.Y. 2013). To hear a case removed from state court, a federal court must have both subject-matter jurisdiction and removal jurisdiction. See Holzer v. Mondadori, No. 12-cv-5234, 2013 WL 1104269, at *6 (S.D.N.Y. Mar. 14, 2013).

## III.

The propriety of removal in this case turns on the applicability of Chapter 2 of the FAA, 9 U.S.C. § 201 et seq., which implements the New York Convention. Section 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States," and that "[t]he district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. Section 202, in turn, "describes which actions 'fall under the Convention.'" Sarhank Grp. v. Oracle Corp., 404 F.3d 657, 660 (2d Cir. 2005); see 9 U.S.C. § 202. Furthermore, § 205 allows for the removal of cases from state courts "[w]here

6

the subject matter of an action or proceeding pending in a State
court relates to an arbitration agreement or award falling under
the Convention." 9 U.S.C. § 205.

The parties dispute only whether the Court has subject-
matter jurisdiction over this action pursuant to Chapter 2 of
the FAA.[3] Endurance argues that the Court lacks original subject-
matter jurisdiction because § 203 grants jurisdiction over only
a few narrow categories of relief not sought in the present
action. Pet.'s Memo. on Removal, ECF No. 19, at 6-8. Endurance
specifically argues that subject-matter jurisdiction under § 203
is limited to requests to compel arbitration, to enforce or
vacate an arbitral award, to obtain a preliminary injunction in
aid of arbitration, or to stay an incompatible arbitration
proceeding. Id. at 8. Because none of those remedies are at

---

[3] Horseshoe did not invoke diversity jurisdiction as a basis for
removal, and the parties do not dispute that such jurisdiction
is lacking. See Notice of Removal at 1; Pet.'s Memo. on Removal,
ECF No. 19, at 1. Moreover, as Endurance itself observes, "the
existence of federal jurisdiction under 9 U.S.C. § 203 and
compliance with the 9 U.S.C. § 205 removal provision present
different questions." Pet.'s Reply, ECF No. 27, at 5; see, e.g.,
Republic of Kaz. v. Chapman, 585 F. Supp. 3d 597, 604 (S.D.N.Y.
2022) (explaining that "§ 203 serves to create subject matter
jurisdiction, whereas § 205 serves only to authorize removal.").
Endurance does not dispute that, if the exercise of federal
subject-matter jurisdiction is appropriate under § 203, then the
action was properly removed under § 205. Accordingly, the sole
question in resolving the motion to remand is whether § 203
confers federal subject-matter jurisdiction over the petition.

issue in this case, Endurance contends that the Court does not have original jurisdiction under § 203 of the FAA.[4]

In response, Horseshoe contends that subject-matter jurisdiction under § 203 does not turn on the specific remedies sought by either party. Resp.'s Opp'n on Removal, ECF No. 25, at 7. Rather, Horseshoe argues that exercising subject-matter jurisdiction under § 203 is appropriate because the action and the relief sought arise out of an international arbitration agreement to which the New York Convention applies. Id. at 8.

Endurance's argument that this Court lacks subject-matter jurisdiction over the action is unpersuasive. As a preliminary matter, while Endurance does not appear to dispute this point, the parties' arbitration plainly "falls under the Convention" within the meaning of § 202. For an arbitration to fall under the New York Convention, it "(1) must arise out of a legal relationship (2) which is commercial in nature and (3) which is not entirely domestic in scope." Pike v. Freeman, 266 F.3d 78,

---

[4] In its opening papers, Endurance appeared to assert that jurisdiction could exist under § 203 only where the removing party (that is, Horseshoe) sought one of these forms of relief. See Pet.'s Memo. on Removal at 8 (arguing that "this Court does not have original jurisdiction" because "Horseshoe has never sought" the specified remedies). However, on reply, Endurance retracted that argument. See Pet.'s Reply at 2 n.1 ("Endurance does not argue that this Court must look exclusively at the relief sought by the removing party, Horseshoe, when examining jurisdiction.").

85 n.4 (2d Cir. 2001); <u>see</u> <u>CRT Cap. Grp. v. SLS Cap., S.A.</u>, 63
F. Supp. 3d 367, 374 (S.D.N.Y. 2014).

Here, all three elements are established. Both Horseshoe
and Endurance acknowledge that they are legal parties to two
commercial contracts containing the arbitration agreements at
issue. <u>See</u> Pet.'s Memo. on Removal at 1 ("Endurance . . . and
Horseshoe . . . are parties to an arbitration under two bargained-
for reinsurance contracts."); Resp.'s Opp'n on Removal at 2
("Horseshoe and Endurance . . . are parties to two substantially
identical reinsurance contracts, which contain identical
arbitration provisions."). Furthermore, neither party is a
domestic entity; both are based in Bermuda, which is also the
location of the arbitration itself. <u>See</u> Pet.'s Memo. on Removal
at 1 ("Endurance and Horseshoe are both foreign entities.");
Resp.'s Opp'n on Removal at 2 ("Horseshoe and Endurance[] [are]
both Bermuda entities[.]"). Therefore, the three elements listed
above are plainly met and the arbitration falls under the New
York Convention.

Furthermore, § 203 permits the exercise of jurisdiction
over Endurance's petition to disqualify Sir Bernard from the
arbitration tribunal. In support of its assertion that § 203
covers only limited remedies, Endurance cites <u>International</u>
<u>Shipping Co. v. Hydra Offshore, Inc.</u>, 875 F.2d 388, 391 n.5 (2d
Cir. 1989), where the district court had held that the New York

Convention was "inapplicable . . . because the party invoking its provisions did not seek either to compel arbitration or to enforce an arbitral award." Id. The Second Circuit Court of Appeals recited this holding in concluding that the district court had "appropriately rejected" § 203 as a basis for jurisdiction. Id.

However, after Hydra Offshore was decided, the Second Circuit Court of Appeals has "expanded the scope of § 203," albeit "slightly." CRT Cap. Grp., 63 F. Supp. 3d at 373; see, e.g., Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012) (stating that § 203 provides "jurisdiction over actions to . . . vacate an arbitral award"); Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 391 n.6 (2d Cir. 2011) (holding that a federal court had jurisdiction under § 203 to stay incompatible arbitration proceedings despite "dicta" in Hydra Offshore suggesting otherwise); Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822, 826 (2d Cir. 1990) (finding federal jurisdiction under the New York Convention to issue "preliminary injunction[s] in aid of arbitration"). Thus, "subsequent cases have construed § 203 somewhat more broadly" to include other relief "tightly intertwined with the arbitration proceedings or awards." Republic of Kaz. v. Chapman, 585 F. Supp. 3d 597, 605 (S.D.N.Y. 2022) (summarizing the expansion of the scope of § 203 over

10

time, and ultimately declining subject-matter jurisdiction over a subset of the claims because they were too tenuously connected to the relevant arbitration).

This is not one of those cases where the connection between the relief sought and the arbitration is "so tenuous that § 203 cannot confer jurisdiction." Id.; see, e.g., Albaniabeg Ambient Sh.p.k. v. Enel S.p.A., 169 F. Supp. 3d 523, 530 (S.D.N.Y. 2016) (declining to extend jurisdiction under § 203 to an action to enforce a foreign court's judgment). To the contrary, it is hard to conceive of a proceeding more intimately intertwined with an international arbitration than a petition to disqualify and replace the presiding arbitrator. Such a petition is certainly no less intertwined with an international arbitration than a request for preliminary injunctive relief in aid of the same arbitration would be. See Borden, 919 F.2d at 826; Venconsul N.V. v. TIM Int'l N.V., No. 03-cv-5387, 2003 WL 21804833, at *3 (S.D.N.Y. Aug. 6, 2003) (interpreting Borden "as recognizing a court's power to entertain requests for provisional remedies in aid of arbitration even where the request for [those] remedies does not accompany a motion to compel arbitration or to confirm an award"). That is especially true in this case, where the very purpose of Endurance's request is to enforce the arbitration provision requiring the appointment of "completely impartial" arbitrators in the parties' Bermuda-based arbitration. See,

11

e.g., Pet. ¶¶ 12, 16, Ex. A at 4-5; see also id. ¶ 25, Ex. A at 6 ("Because Eder is not close to 'completely impartial' . . . [t]he proposed composition of any arbitration panel to include Eder would be directly contrary to the terms of the Contracts' arbitration provisions."). Accordingly, this action falls within the scope of § 203.

In short, Endurance's contention that this action is outside the scope of § 203 lacks merit. Because the parties' arbitration falls under the New York Convention and the relief sought in Endurance's petition is tightly intertwined with that arbitration, the Court has federal subject-matter jurisdiction over this action pursuant to 9 U.S.C. § 203. Thus, Endurance's motion to remand is **denied.**

## IV.

With the threshold jurisdictional question resolved and the request for remand denied, the next issue is Horseshoe's motion to dismiss Endurance's petition for failure to state a claim on which relief can be granted. On a motion to dismiss, the allegations in the petition are accepted as true, and all reasonable inferences are drawn in the petitioner's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). However, the Court does not accept as true legal conclusions contained in the petition. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court may also consider documents

that are referenced in the petition, documents that the
petitioner relied on in bringing suit and that are either in the
petitioner's possession or that the petitioner knew of when
bringing suit, or matters of which judicial notice may be taken.
See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.
2002). The Court's function is "not to weigh the evidence that
might be presented at a trial but merely to determine whether
the [petition] itself is legally sufficient." Goldman v. Belden,
754 F.2d 1059, 1067 (2d Cir. 1985).

**V.**

In support of its motion to dismiss, Horseshoe argues that
Endurance fails to state a claim because, among other reasons,
(1) the Supreme Court of Bermuda maintains exclusive power to
remove an arbitrator under Bermuda procedural law, which applies
pursuant to the parties' arbitration agreements, and (2) the
petition's allegations do not establish bias in any event.
Resp.'s Memo. on Dismissal at 1, 13. In opposition, Endurance
argues that its allegations of bias are sufficient to warrant
Sir Bernard's removal under both Bermuda and New York law.
Pet.'s Opp'n on Dismissal, ECF No. 24, at 2-3.

The parties do not dispute that their arbitration
agreements require the application of Bermuda procedural law.
See Resp.'s Memo. on Dismissal at 13; Pet.'s Opp'n on Dismissal
at 13. Furthermore, courts in this Circuit presume the validity

13

of such choice-of-law clauses. See Roby v. Corp. of Lloyd's, 996
F.2d 1353, 1362-63 (2d Cir. 1993) (noting that choice-of-law
clauses are presumptively valid where the underlying transaction
is "international in character," and holding that contractual
choice-of-law and forum-selection clauses requiring arbitration
in England under English law were enforceable); Metal Bulletin
Ltd. v. Scepter, Inc., 192 F. Supp. 3d 377, 381 (S.D.N.Y. 2016).
Indeed, where, as here, "the parties have chosen" a body of
foreign law to govern their arbitration, "honoring their choice
is necessary to ensure uniform interpretation and enforcement of
th[e] agreement," and is also "fully consistent with the purposes
of the FAA." Motorola Credit Corp. v. Uzan, 388 F.3d 39, 51 (2d
Cir. 2004) (enforcing a Swiss choice-of-law provision in an
arbitration agreement). Thus, the Court must review the request
to remove the arbitrator under Bermuda procedural law.[5]

Both parties agree that the Bermuda Arbitration Act,
specifically Section 34(1), governs the removal of an arbitrator
under Bermuda procedural law. See Resp.'s Memo. on Dismissal at
2, 13; Pet.'s Opp'n on Dismissal at 2, 4, 13. Section 34(1)
states that, "[w]here an arbitrator or umpire has misconducted
himself or the proceedings, the Court may remove him." Bermuda

---

[5] Because Bermuda procedural law governs the arbitration, the
Court need not address Horseshoe's independent argument that the
FAA bars pre-award challenges to the appointment of an
arbitrator. See Resp.'s Memo. on Dismissal at 11-12.

Arbitration Act § 34(1), Ex. A at 136 (emphasis added). Furthermore, Section 2 defines "Court" as the Supreme Court of Bermuda. Id. § 2, Ex. A at 122. Therefore, in accordance with the procedural law agreed to by the parties and consistent with the plain language of the Bermuda Arbitration Act, only the Supreme Court of Bermuda can remove an arbitrator for bias in this proceeding. Thus, this Court is without authority to grant Endurance's requested relief.

Even assuming the Court has the authority to remove an arbitrator in a Bermuda arbitration proceeding, the petitioner fails to identify any reasonable basis for disqualifying Sir Bernard under the applicable law. The parties agree that under Bermuda law, an arbitrator should be removed only if "there is a real danger of bias." See Raydon Underwriting Mgmt. Co. Ltd. v. Stockholm Re (Bermuda) Ltd. [1998] Bda LR 73 (Berm. Sup. Ct.), Ex. A at 146-47; Resp.'s Memo. on Dismissal at 17; Pet.'s Opp'n on Dismissal at 13. And Endurance alleges that Sir Bernard is not impartial because (1) the ICC Court disclosed to him that Horseshoe requested an arbitrator with his precise background, (2) the ICC Court disclosed to him that Endurance opposed an arbitrator with his precise background, and (3) Sir Bernard had a negative experience with Endurance's counsel in a previous arbitration. See Pet. ¶¶ 17-23, Ex. A at 5-6; Pet.'s Opp'n on Dismissal at 3.

Endurance advanced these challenges before the ICC Court, which denied Endurance's request to have Sir Bernard removed.[6] See ICC Decision ¶¶ 12-21, Ex. A at 117-19. In a sound and well-reasoned decision, the ICC Court articulated precisely why the allegations in the petition are meritless. With respect to the alleged disclosures of the parties' arbitrator preferences, the ICC Court explained that the only statements disclosed to Sir Bernard were those contained in the parties' formal submissions on the appointment of an arbitrator, which was consistent with its "usual practice" -- a point that Endurance does not dispute. Id. ¶ 14, Ex. A at 117; see Pet.'s Opp'n on Dismissal at 6. It is also plain, as the ICC Court found, that the disclosure of a party's general "preferences as to the profile of the presiding arbitrator" are not sufficient to "give rise to a risk of the arbitrator having a bias." ICC Decision ¶ 14, Ex. A at 117.

With regard to the previous arbitration involving Sir Bernard, the ICC Court explained that the arbitration proceeding at issue "was unrelated to the present case, the alleged bias related to procedural decisions made by Sir Bernard, and the bias was alleged toward counsel and did not involve a party in

---

[6] Endurance attached the ICC Court's decision to its own petition as an exhibit, and accordingly, this Court may consider it. See Chambers, 282 F.3d at 152 (the pleading "is deemed to include any written instrument attached to it as an exhibit"); see also Attisani Aff. in Support of Petition ¶ 14, Ex. A at 15; ICC Decision, Ex. A at 114-19.

the present case." Id. ¶ 17, Ex. A at 118. That description is entirely consistent with Endurance's own account of the events in question, as set forth in Endurance's petition and its motion papers. See, e.g., Pet.'s Opp'n on Dismissal at 6-7 (summarizing Endurance's allegations that, in a prior arbitration "involving parties other than Endurance and Horseshoe," "lead counsel" for Endurance clashed with Sir Bernard over issues related to ex parte contacts and consolidation with another arbitration); see also Pet. ¶¶ 20-22, Ex. A at 5-6. The ICC Court explained that prior unfavorable procedural decisions by an arbitral tribunal typically do not constitute bias unless they are manifestly improper or raise due process concerns, and such circumstances were absent here. ICC Decision ¶ 17, Ex. A at 118. The ICC Court also noted that the failure of Sir Bernard to disclose the prior interaction with Endurance's counsel in an unrelated arbitration did not constitute a sufficient ground to remove Sir Bernard. Id. ¶ 20. The Court agrees with the reasoning of the ICC Court: there was no basis to remove Sir Bernard.

In short, Endurance's petition to remove Sir Bernard is unconvincing in alleging any "real danger" of bias. The cited bases for Sir Bernard's supposed bias and prejudice fall far short of meeting that standard, whether considered individually or taken together.

Endurance also relies on New York case law to support its position that the presiding arbitrator should be removed for lack of impartiality. But even under New York law, Endurance's allegations fail to state a claim. Under New York law, an arbitrator's bias can be established by "actual bias or the appearance of bias." David v. Byron, 14 N.Y.S.3d 91, 93 (App. Div. 2015). However, the appearance of bias "must be clearly apparent based upon established facts." Bronx-Lebanon Hosp. Ctr. v. Signature Med. Mgmt. Grp., 775 N.Y.S.2d 279, 280 (App. Div. 2004). In this case, for the same reasons set forth above, the appearance of bias is not clearly apparent given the alleged facts.[7] See, e.g., PK Time Grp., LLC v. Robert, No. 12-cv-8200, 2013 WL 3833084, at *3-4 (S.D.N.Y. July 23, 2013) (finding, under New York law, that a party to an arbitration could not establish bias based on unfavorable procedural rulings).

In sum, the Court is without authority to remove a sitting arbitrator in an arbitration proceeding conducted under Bermuda procedural law, and in any event, the petition fails on the merits. Horseshoe's motion to dismiss the petition is **granted.**

---

[7] Furthermore, both parties admit that the standard for the removal of an impartial arbitrator under New York law is similar to that under Bermuda law. See Pet.'s Opp'n on Dismissal, at 15; Resp.'s Memo. on Dismissal, at 17. As such, Endurance plainly fails to state a claim of bias against Sir Bernard for the same reasons explained above with regard to Bermuda law.

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, they are either moot or without merit. For the reasons explained above, the petitioner's motion to remand is **denied** and the respondent's motion to dismiss is **granted**. The Clerk is directed to dismiss the petition. The Clerk is also directed to close all pending motions and to close the case.

**SO ORDERED.**

Dated:    **New York, New York**
           **July 5, 2023**

                                    **John G. Koeltl**
                          **United States District Judge**